IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES ARMOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   19-cv-678-RJD |
| | ) | |
| DR. VENERIO SANTOS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Charles Armour, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 asserting his constitutional rights were violated while he was incarcerated at Centralia Correctional Center ("Centralia"). More specifically, Plaintiff alleges he suffers from chronic lower back pain, degenerative disc disease, seizure/convulsive muscle spasms, and fibromyalgia and, as a result, he is confined to a wheelchair.   Plaintiff alleges he was not provided adequate medical care for his conditions at Centralia.   Plaintiff further asserts he was not provided certain assistive devices, such as a wheelchair with removable arms, or otherwise provided appropriate accommodations.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he now proceeds on the following claims:

Count One:   Dr. Venerio Santos, Dr. Arnel Garcia, Lisa Krebs, and Jessica Kneleb were deliberately indifferent under the Eighth Amendment to Plaintiff's spinal condition.

Count Two:   Deana Shoemaker, Terry Dean, Tish Finney, Becky Pickett, and Beverly Habbe were deliberately indifferent under the Eighth Amendment to Plaintiff's spinal condition.

Page **1** of **24**

Count Four:  Violation of the Americans with Disabilities Act and/or the Rehabilitation Act for failing to accommodate Plaintiff's medical needs.  This claim is brought against Rob Jeffreys in his official capacity.

Count Five:  Robert Mueller and David Stock were deliberately indifferent under the Eighth Amendment to Plaintiff's serious medical needs by not providing him with adequate access to showers and failing to refer him to an emergency room.

Count Six:  Correctional Officer Jason Zurliene was deliberately indifferent under the Eighth Amendment to Plaintiff's serious medical needs when he failed to provide Plaintiff with medical attention for a medical emergency.

This matter is now before the Court on the following motions related to discovery:

- Motion to Quash Plaintiff's Subpoena filed by Wexford Health Sources, Inc. (Doc. 214)

- Motion for Leave to Take Depositions Beyond the Number Provided by Fed. R. Civ. P. 30 filed by Plaintiff (Doc. 216)

- Motion to Quash and/or Modify Subpoenas filed by the Illinois Department of Corrections and Centralia Correctional Center (Doc. 221)

- Motion to Compel Discovery filed by Plaintiff (Doc. 226)

- Supplement to Plaintiff's Motion to Compel Discovery (Doc. 228-1)

As the motions now before the Court relate to various discovery concerns, the Court first addresses the proper scope of discovery.   The scope of discovery is set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure.   The current language of the Rule provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence

to be discoverable.

The Supreme Court has cautioned that the requirement under Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where necessary. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). However, "relevancy" for discovery purposes is construed broadly to encompass matters that bear on, or reasonably could lead to other matters that could bear on, any issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "Relevance is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter properly provable in the case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. Jan. 6, 2014) (citation omitted).

Further, under Rule 26, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at *2 (N.D. Ill. Nov. 10, 2021) (citing Fed. R. Civ. P. 26, advisory committee notes to 2015 amendment). The court in *Arsberry* set forth the following discussion regarding the analysis of proportionality:

> [P]roportionality "is not self-defining; it requires a common sense and experiential assessment." *Generation Brands, LLC v. Décor Selections, LLC*, 19 C 6185, 2021 WL 780485, at *2 (N.D. Ill. Mar. 1, 2021). "[T]he key … is careful and realistic assessment of actual need" that may "require the active involvement of … the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016). However, courts are not required to re-write discovery requests, and frequently decline to do so. *See Elwyn Robinson v. PPG Industries, Inc. et al.*, CV19040330DWRAOX, 2021 WL 4497222, at *6 (C.D. Cal. July

Page **3** of 24

23, 2021); *Settlemyer v. Borg-Warner Morse TEC, LLC*, 1:19 CV 344 MR WCM, 2021 WL 66411, at *3 (W.D.N.C. Jan. 7, 2021); *Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016); *Annex Books, Inc. v. City of Indianapolis*, 103CV))918SEBTAB, 2011 WL 13305341, at *3 (S.D. Ind. Feb. 18, 2011).

The Court has considered the above-mentioned motions and any responses and replies thereto in light of Rule 26 and other applicable authority, and sets forth its decisions as to each motion below.

## Plaintiff's Motion to Compel Discovery (Doc. 226)

In this motion, Plaintiff asserts many of Defendants' responses and objections to his requests for production and interrogatories were inadequate and made without proper basis.

Counsel for IDOC and Wexford Defendants assert Plaintiff's motion should be denied because Plaintiff failed to include a certification required under Federal Rule of Civil Procedure 37(a)(1) that he in good faith conferred or attempted to confer with Defendants prior to bringing this issue before the Court.   While the Court is mindful of this requirement, it finds Plaintiff's efforts in this instance satisfactory as the issues regarding discovery were referenced during the April 7, 2022 status conference and the Court directed Plaintiff to file the motion to compel now before the Court.

### 1.  Possession, Custody, or Control

Wexford and IDOC Defendants lodge various objections to Plaintiff's requests for production of documents.   Subject to said objections, Wexford Defendants included in their response to each request that the requested documents were not in their "possession, custody, or control" (*see* Doc. 226-1 at 1-36)   The IDOC Defendants also asserted the requested documents were not in their "possession, custody, or control" in response to requests numbered 1, 2, 3, and 4,

and, with respect to Defendant Zurliene, request number 7 as well (*see* Doc. 226-2). Plaintiff disagrees with Defendants' contention regarding possession, arguing Defendants have easy access to these materials by way of their employment and, as such, Plaintiff asserts the documents sought are in Defendants' "possession, custody, or control" and they can produce the same.

The court in *Robinson v. Moskus*, 491 F.Supp.3d 359 (C.D. Ill. 2020), engaged in a comprehensive review of case law concerning the meaning of "possession, custody, or control" in this context that the undersigned finds persuasive.   In reviewing the meaning and tests assigned to determine "possession, custody, or control," the *Robinson* court determined the standard to apply when considering whether a party has "possession, custody, or control" of a document in the hands of a third-party "is whether the party has a legal right to control or obtain" the documents requested, noting that a party's "practical ability" to obtain the documents is irrelevant absent a legal right to do so.   *Robinson*, 491 F.Supp. at 355.   Similar to the circumstances here, the court in *Robinson* found that the individual IDOC employee defendants certainly had the practical ability to obtain the requested documents from the IDOC, as occurs in numerous cases every year. *Id.* at 364.   The court went on to state that "[p]resumably, the Attorney General and the IDOC accommodate these requests to avoid a flood of subpoenas which would issue if they refused to do so."   *Id.* at 364-65.   Despite having the "practical ability" to obtain documents possessed by the IDOC, the *Robinson* court found the individual IDOC employees lacked a "legal right to control or obtain" the documents.   *Id.* at 365.   The Court finds the individual Wexford and IDOC employees to be similarly situated here.   Although they are current or former employees of these entities, the individual defendants' status as employees does nothing to confer a legal right on Defendants to obtain policies and procedures and other documents maintained by IDOC or Wexford.   Given that the documents at issue are not in the possession, custody, or control of

Defendants, the Court cannot compel production of the same for the requests at issue.   Notably, however, as the *Robinson* court opined, such obstinance in producing these documents only gives way to the service of subpoenas, which is at issue here and will be discussed below.

### 2. Policies Relevant to Plaintiff's Healthcare at Centralia

Plaintiff complains that Defendants have not produced any documents in response to Request for Production No. 4, in which Plaintiff seeks "[a]ll Documents evidencing policies, procedures, Administrative Directives, manuals, guidelines, Department Rules, or the like that were applicable to or affected decisions and/or determinations made with respect to Mr. Armour's Healthcare, including but not limited to whether or not to refer Mr. Armour to an outside neurologist or other specialist, whether or not to provide Mr. Armour with pain medication pursuant to his requests, whether or not to force him to stand and ablute, ADA or RA compliance, and any other Healthcare actions or inactions that are subject of Grievances created, submitted, or file [sic] by Mr. Armour."

Defendants set forth various objections to this request, asserting said request is irrelevant, overbroad, and not proportional to the needs of the case.   Defendants also indicated that subject to and without waiving their objections, they are not in possession, custody, or control of the documents sought by Plaintiff.   As discussed above, the Court cannot compel production of documents that Defendants do not possess or control.   Plaintiff's motion to compel policies as requested in Request for Production No. 4 must therefore be **DENIED**.   In light of this ruling, the Court need not address Defendants' objections.

### 3. Basis for Healthcare Provided, and Not Provided, to Plaintiff at Centralia

Plaintiff asserts he requested the bases for, and policies underlying, Defendants' decisions with respect to:

    **a.**  Plaintiff's request for an outside referral (interrogatory 3 directed to Defendants Santos and Garcia);

    **b.**  Plaintiff's pain medication (interrogatory 4 directed to Defendants Santos and Garcia; interrogatory 3 directed to Defendant Knebel);

    **c.**  Plaintiff's physical therapy (interrogatory 5 directed to Defendants Santos and Garcia; interrogatory 3 directed to Defendants Dean, Shoemaker, and Habbe);

    **d.**  Plaintiff's requests for ADA- or RA-compliance (interrogatory 6 directed to Defendant Santos; RFP 11 directed to Defendants Santos, Garcia, Dean, Shoemaker, Habbe, Knebel, and Zurliene);

    **e.**  Plaintiff's hygienic care (interrogatory 7 directed to Defendant Santos; interrogatory 6 directed to Defendant Garcia; interrogatory 4 directed to Defendants Dean, Knebel, Shoemaker, and Habbe;

    **f.**  Plaintiff's placement in isolation or solitary confinement (interrogatory 8 directed to Defendant Santos).

Plaintiff also asked Defendants to describe incidents in which Plaintiff: appeared to suffer spasms; urinated or defecated on himself; and was prescribed or underwent physical therapy.

Plaintiff complains that Defendants' blanket objections to these requests impede discovery by unhelpfully stating that such decisions are made on a "case-by-case basis" and generally refer Plaintiff to the volume of medical records already produced. Plaintiff asserts he is entitled to learn specific bases for the specific issues he has identified.

Defendants assert their objections were proper and the interrogatories are overly broad in time and scope, unduly burdensome, vague, and ambiguous. The Court agrees. Plaintiff seeks the specific bases for certain decisions, but failed to articulate with specificity the incidents about which he seeks information. For example, in interrogatory 3 directed to Defendant Santos, Plaintiff directs Santos to "[d]escribe in detail the basis, including, but not limited to, any applicable standard of care, for not referring Mr. Armour to an outside neurologist or other medical specialist and all Documents, policies, and procedures supporting such basis." No dates or other

context was provided to direct Santos to a specific occurrence. Plaintiff, without providing additional information concerning the date on which such circumstances occurred or directing Santos to a specific incident, cannot expect more than the response provided by Santos.

The Court has reviewed the interrogatories identified by Plaintiff and sustains Defendants' objections to the same. Plaintiff's motion to compel as to this issue is **DENIED**.

### 4. *Documents Identifying Job Position/Title/Shifts Worked*

Plaintiff complains that the Wexford Defendants failed to produce any documents in response to requests for production numbers 8 and 9 seeking documents identifying Defendants' job position or title and work schedule and shifts worked. Plaintiff also suggests Defendant Zurliene's response to requests numbers 7 and 8 seeking similar information was insufficient, asserting Zurliene produced a "scant" amount of documents.

Plaintiff asserts the requested materials are relevant to whether the harm to Plaintiff was caused by Defendants' conduct, and by which Defendants and in what roles.

With regard to the Wexford Defendants, the Court accepts their representation that such documents are not in their possession, custody, or control; therefore, the Court's finding set forth above is applicable and they will not be compelled to produce documents not in their control.

Defendant Zurliene did not assert that such documents are not in his possession, custody, or control. However, he provided documents responsive to this request, and Plaintiff failed to state with any particularly why the documents produced are insufficient.

Plaintiff's motion to compel as to documents identifying job positions, title, and/or shifts worked is **DENIED**.

### 5. *Document Retention Policies*

Plaintiff asserts Defendants' objections to his request for production number 3 seeking

document retention policies of Wexford, IDOC, or Centralia were not proper and that these policies are directly relevant to the existence of discoverable information.

Defendants all asserted these documents were not in their possession, custody, or control and the Court's decision with respect to the same as set forth above controls.   The Court will not compel Defendants to produce documents they have no legal right to possess.   Plaintiff's motion to compel document retention policies is **DENIED**.

### 6. *Audits, Disciplinary History, Reprimands, Performance Reviews, and Reports of Malpractice or Insurance Claims*

Plaintiff claims audits, disciplinary history, reprimands, performance reviews, and reports of malpractice or insurance claims are relevant to whether Plaintiff received constitutionally substandard medical care from Defendants.

First, the Court has reviewed the requests at issue and finds it is not clear what interrogatory or request for production was directed at the production of audits.   As such, a request for audit documents is **DENIED**.

Plaintiff asserts he requested documents evidencing Defendants' disciplinary actions and reprimands in request for production number 5.   The Wexford Defendants asserted such documents are not in their possession, custody, or control and, as such, the Court's decision with the regard to the same is applicable.   IDOC Defendants did not assert such documents were not in their possession, custody, or control; however, they objected on various bases, asserting said request was overbroad in time and scope and not relevant.   The Court agrees.   Plaintiff did not limit this request to issues concerning his claims; rather, he seeks documents evidencing disciplinary actions or reprimands related to Defendants' "duties" at Centralia or any other correctional facility.   Clearly, this is beyond the scope of relevancy contemplated by Rule 26 as it

would necessarily include documents that have nothing to do with the issues in this lawsuit.   For these reasons, Plaintiff's request to compel documents responsive to request for production number 5 is **DENIED**.

Plaintiff seeks to compel documents responsive to his request for production number 6 seeking insurance agreements, contracts, statutes, regulations, or other obligations under which any person or entity may be liable to satisfy all or part of a possible judgment against Defendants. Insofar as the Wexford Defendants asserted such documents are not in their possession, custody, or control, the Court's decision with regard to such issue controls.   Insofar as IDOC Defendants responded that they may be covered by the State Employee Indemnification Act, Plaintiff failed to assert how such response is insufficient.   Plaintiff's request to compel any additional response to request to production number 6 is **DENIED**.   Relatedly, in request for production number 7 directed to the Wexford Defendants, Plaintiff seeks documents evidencing information provided to Defendants' insurer or other malpractice insurance carrier relating to services rendered with respect to Plaintiff.   Defendants assert such documents are not in their possession, custody, or control and the Court's decision with regard to this issue controls.   Plaintiff's request to compel the production of such documents is **DENIED**.

### 7.   *Common Interest Agreement*

Plaintiff sought, by way of interrogatory, details concerning any written joint defense or common interest agreement.   More specifically, Plaintiff asked Defendants to "[s]tate the effective date of, the date of execution of, and the parties to any written joint defense or common interest agreement" (*see, e.g.,* Doc. 226-1 at 41, Interrogatory No. 14 directed to Defendant Santos).   The Wexford Defendants objected, asserting the request is overly broad, seeks irrelevant information, and is disproportionate to the needs of this case.   Defendants also asserted such

information is protected by attorney-client privilege, attorney work product privilege, and/or insurer-insured privilege.   Defendants' objections are **OVERRULED**.   The mere existence of a written joint defense or common interest agreement is not privileged and may be relevant.   While the Court recognizes communications covered by a common interest agreement may be privileged, it does not appear Plaintiff was seeking such communications in this interrogatory**.**   Defendants Santos, Garcia, Dean, Knebel, Shoemaker, and Habbe shall supplement their response to the interrogatory seeking the effective date, date of execution, and parties to any written joint defense of common interest agreement by **November 30, 2022.**

### 8.   *ADA Coordinator*

Plaintiff asks that Defendants respond to interrogatories directed to the Wexford Defendants asking Defendants to "[i]dentify any and all individuals who have held the position of ADA Coordinator … during the time period June 8, 2016 to April 13, 2018 at Centralia Correctional."   Plaintiff asserts the Wexford Defendants refused to answer this request, arguing said request "could have been answered by simply determining and providing the name of the applicable person."   Plaintiff also contends such information is relevant to proving responsibility for Plaintiff's ADA and RA claims.   The Wexford Defendants objected to this request on relevancy, breadth, and proportionality grounds, asserting Plaintiff's allegations of ADA and RA non-accommodation are not directed at the Wexford Defendants.   Defendants' objections are **OVERRULED**.   This interrogatory bears on an issue in the case, and Rule 26(b)(1) clearly provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense.   Defendants shall supplement their responses to the interrogatory seeking the above-mentioned information by **November 30, 2022.**

**<u>Plaintiff's Supplement to His Motion to Compel Discovery (Doc. 228-1)</u>**

In this motion, Plaintiff explains he seeks to supplement his Motion to Compel discovery due to receiving late responses to interrogatories propounded on Defendants Lisa Krebs, Robert Mueller, David Stock, and Jason Zurliene,[1] noting that his deadline to file a motion to compel was due by April 28, 2022, and he did not receive Defendants' interrogatory responses until May 2 (Krebs, Mueller, Stock) and May 9, 2022 (Zurliene).   Defendants did not respond to Plaintiff's supplemental motion.   Plaintiff sets forth various arguments in his supplemental motion, which are addressed as follows.

### 1.   *Possession, Custody, or Control*

Plaintiff complains that IDOC Defendants Krebs, Mueller, Stock, and Zurliene objected to Plaintiff's interrogatories on possession, custody, and control grounds.   Plaintiff asserts that as employees or former employees, in the case of Krebs, Mueller, and Stock, the information sought is available to Defendants, at least upon request.   Similar to Defendants' responses to Plaintiff's requests for production wherein Defendants often claimed they did not have any such documents in their possession, custody, or control, Defendants generally object to Plaintiff's interrogatories, asserting Plaintiff seeks information from third parties and information not within the possession, custody, or control of Defendants.   Similar to the Court's finding above with regard to possession, custody, or control, the Court cannot compel production of documents or information that Defendants have no legal right to obtain.   As it is Plaintiff's burden in this instance to establish Defendants' control over the documents and information sought, and Plaintiff has failed to counter Defendants' contention, Plaintiff's motion to compel additional information from Defendants on this basis is **DENIED**.

---

[1] Plaintiff represents that at the time of filing he had not yet received interrogatory responses from Rob Jeffreys.

### 2. *Emails and Other Digital Information*

Plaintiff asserts that in response to his second interrogatory request asking Defendants to "[i]dentify all communications involving Mr. Armour that relate to the possibility of providing Mr. Armour with medical accommodations due to disability or physical impairment," he has received no emails or other digital information.   Plaintiff asserts that relevant emails exist, or at one time existed, as Defendants Stock, Mueller, and Krebs made mention of possible emails in their responses to interrogatory number 2.   However, as explained in their interrogatory responses, Defendants Stock, Mueller, and Krebs have all retired and no longer work for the IDOC.   As such, they do not have access to their state email address.   Because Plaintiff has not shown Defendants have a legal right to this digital information, the Court cannot compel a further response to this interrogatory.

### 3. *Joint Defense/Common Interest Agreements*

Plaintiff asserts that Defendants Krebs, Mueller, Stock, and Zurliene indicated they have not entered into any written joint defense or common interest agreement with any co-defendant in this case.   As such, Plaintiff argues that pertinent communications between these Defendants with any other defendant and/or their attorneys are not protected by attorney-client privilege and should be utilized in responding to the interrogatories and document production requests.

The Court generally agrees with Plaintiff's position; however, it is not clear to the undersigned if Defendants Krebs, Mueller, Stock, or Zurliene withheld or objected to any requests based on an assertion of a joint defense or common interest agreement.   Without any evidence showing that Defendants have improperly withheld information, the Court cannot compel further responses as to this issue.

### 4.  *Malpractice*

In interrogatory number 8 directed to Defendant Krebs, Plaintiff asked that she "[d]escribe in detail any instances where [Krebs] ha[s] been alleged to have provided negligent or substandard patient medical care, whether at Centralia or elsewhere."   Defendant Krebs objected to the request on various bases, and indicated that subject to those objections, she was the HCUA at Centralia and, as the HCUA, she did not provide medical care.   Plaintiff asserts that any previous filings of an insurance claim may be admissible to establish relevant knowledge.   Defendant Krebs' objections are sustained.   As written, the interrogatory at issue is overly broad and not proportional to the needs of this case.   Krebs has also asserted she did not provide medical care as the HCUA.   Plaintiff's motion to compel as to the malpractice issue is **DENIED**.

### 5.  *Policies and Procedures*

In his interrogatories, Plaintiff requests the bases for, and/or policies underlying, and/or processes or procedures in place regarding various decisions Defendants made regarding Plaintiff's medical treatment and other care.   Plaintiff contends these requests are relevant and he is entitled to information concerning the same.

Plaintiff also notes Defendant Stock responded to interrogatory number 1 (seeking information concerning processes in place for determining the needs of a Centralia prisoner for treatment or medical accommodation due to disability or physical impairment) that intake procedures may be found in IDOC administrative directives and Centralia directives.   Defendant Stock indicated he would "obtain these directives and supplement this response with the same." Similarly, Defendant Krebs indicated in response to interrogatory number 5 seeking the basis for any denial or refusal of Plaintiff's requests for ADA- or RA-compliant equipment and facilities that she had requested a copy of the applicable ADA guidelines in place at the time she was the

ADA coordinator at Centralia.

First, insofar as Plaintiff asks the undersigned to overrule all of Defendants' objections to various interrogatories seeking information related to policies and procedures, this request is denied.   While the Court generally agrees with Plaintiff that policies and procedures may be relevant to certain issues in this case, Plaintiff has failed to set forth with any particularity why Defendants' objections to the same should not be sustained and the Court is not inclined to take this task upon itself.   The Court also notes the standing objection and qualifier IDOC Defendants made in response to Plaintiff's interrogatory instructions that Defendants would respond to the interrogatories based upon their personal knowledge and information within their possession, custody, or control.   As analyzed fully above, the Court is not inclined to compel Defendants to provide information not within their possession, custody, or control unless Plaintiff can show Defendants have a legal right to the same.    Notwithstanding this decision, Plaintiff correctly states that Defendant Stock responded to interrogatory 1 indicating he would obtain IDOC administrative directives and Centralia directives concerning prisoner intake procedures, and Defendant Krebs responded to interrogatory 5 indicating she had requested a copy of the ADA guidelines in place at Centralia when she was the ADA Coordinator.   The Court holds Defendants to these statements and their implication that Defendants can obtain possession or control over the documents specifically identified.   As such, insofar as these documents have not been produced by Defendants Stock and Krebs, they are **ORDERED** to produce the same by **November 30, 2022.**

### 6.   *Incident Reports*

Plaintiff asserts he asked IDOC Defendants to describe various incidents in which Plaintiff appeared to suffer spasms, urinate or defecate on himself, was prescribed or underwent physical

therapy, or was placed in isolation or solitary confinement.   Plaintiff asserts that in response to interrogatory number 4 concerning the incidents of spasms, Defendant Mueller indicated that "incident reports" regarding the seizure Plaintiff suffered in the visiting room at Centralia may exist "due to the nature of the incident and the location of the incident."   Mueller also stated that to the extent these incident reports exist, he would supplement his response with the same.

Plaintiff asserts that based on this response, incident reports exist outside of and beyond the documents produced early in the case as to other seizures suffered by Plaintiff.   Plaintiff asks that to the extent additional incident reports exist, Defendants be ordered to disclose the same.

Insofar as Plaintiff failed to explain in any particularized way why the various objections to the disclosure of incident reports sought should be overruled and noting that Defendants set forth objections to the production of information or documents not in their possession, custody, or control and incident reports fall into this category, the undersigned **DENIES** Plaintiff's request to compel additional responses to these interrogatories.   However, Defendant Mueller stated he would supplement his response with incident reports concerning a seizure he described in response to interrogatory number 4.   Defendant Mueller is **ORDERED** to provide these incident reports or explain why they cannot be produced by **November 30, 2022**.

### <u>Wexford Health Sources, Inc.'s Motion to Quash Plaintiff's Subpoena Directed to Wexford Health Sources, Inc. (Doc. 214)</u>

Wexford was served with a subpoena on March 23, 2022 for a Rule 30(b)(6) deposition and a request for documents to be produced at a deposition that was set to occur on April 13, 2022 (*see* Doc. 214-1).   Wexford filed the motion now before in response, asking the undersigned to quash the same.   Wexford asserts the subpoena at issue should be quashed because it is not proportionate to the needs of this case, subjects Wexford to an undue burden, fails to allow a

reasonable time to comply, and would result in more than the number of allowed depositions.

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena directing a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession." FED. R. CIV. P. 45(a)(1)(A)(iii). The ability to use subpoenas to obtain information from non-parties is not unlimited as Rule 45 provides that the issuer of a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Courts consider a number of factors when determining if the burden imposed by a subpoena is "undue," including whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) compliance with the request would impose a burden on the subpoenaed party. *Little v. JB Pritzker for Governor*, No. 18-C-6954, 2020 WL 1939358, *2 (N.D. Ill. April 22, 2020) (citations omitted). A court may also limit discovery pursuant to Rule 26(b)(2)(c) if it determines that the requested documents can be obtained from a more convenient or less burdensome source, the requesting party had an opportunity to obtain the information through the normal discovery process, or the information sought is cumulative or duplicative of other discovery. *Id.*

In support of its motion, Wexford asserts the subpoena at issue is not proportionate to the needs of this case. In determining proportionality, courts are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. In arguing the issue of proportionality, Wexford asserts that Plaintiff's medical records suggest his

requests are consistent with drug-seeking behavior.   Wexford points to certain incidents and dates in Plaintiff's medical records to support its claims.   In an attempt to tie this argument to the issues at hand, Wexford asserts that given Plaintiff's claims and the purported unlikely success Plaintiff will have on the merits, the undersigned should exercise its discretion to protect Wexford from overbroad, harassing discovery.   Wexford's argument misses the mark.   Rather than address the factors set forth in Rule 26, Wexford improperly attempts to litigate the substance and merits of Plaintiff's claims.   Wexford has failed to articulate how the policies sought are not important to the issues at stake or are otherwise available to Plaintiff, or how producing said policies is such a significant burden and expense the Court should find in their favor.   Merely declaring significant expense and burden without substantiating the same is not enough.   Without providing the undersigned with salient information concerning the factors set forth in Rule 26, the Court cannot quash the subpoena directed to Wexford on this basis.

Wexford also asserts that the request for documents to be produced at deposition seek information that is not relevant.   Wexford contends that testimony and documents relating to policies, handbooks, manuals, guidelines, procedures, contracts, job descriptions, disciplinary records, audits, record keeping practices, and administrative tribunal findings or determinations that violations of inmates' rights were attributable in whole or in part to policies or procedures of Wexford have no relevance to the claims against the Wexford Defendants personally.   The Court agrees in part.   Upon careful review of the "Documents to be Produced at Deposition," the Court finds numbers 2, 3, and 7 to be both relevant and proportional to the needs of the case.   The remainder of the document groups sought by Plaintiff are overly broad and seek information not relevant to Plaintiff's claims.   With regard to the "Designated Topics for Deposition," Wexford should be prepared to testify as to topics number 2, 3, and 6.   Again, the remaining topics

identified by Plaintiff are overly broad and seek information not relevant to Plaintiff's claims.

Based on the foregoing, Wexford's Motion to Quash is **DENIED**.  Plaintiff's subpoena directed to Wexford, however, is **MODIFIED** as set forth in this Order.  Insofar as Wexford asserts the subpoena should be quashed as Plaintiff failed to allow a reasonable time to comply, the Court finds this issue **MOOT**.  The parties are directed to meet and confer to establish a convenient time and place for all parties to conduct the Rule 30(b)(6) deposition, which **shall** be completed by the discovery deadline that will be set by the Court at a later date.  Wexford's complaint concerning the number of allowed depositions will be addressed in the Court's discussion on Plaintiff's Motion for Leave to Take Depositions Beyond the Number Provided by Fed. R. Civ. P. 30.

### Illinois Department of Corrections and Centralia Correctional Center Motion to Quash and/or Modify Subpoenas (Doc. 221)

IDOC and Centralia assert the subpoenas issued by Plaintiff should be quashed or modified because the subpoenas impose an undue burden on Centralia and IDOC, exceed the scope of discovery set forth in Rule 26(b)(1), and were issued with insufficient time for Centralia and IDOC to comply.

First, the Court considers IDOC and Centralia's undue burden argument.  Centralia asserts Designated Topics 1, 5, 7 and 8, and document requests corresponding to the same fail to describe matters for examination with reasonable particularity and therefore impose an undue burden.  IDOC also asserts Designated Topics 1, 5, 7, and 8, and corresponding document requests impose an undue burden for the same reason.  IDOC and Centralia assert that the expansiveness of these topics make it "practically impossible to designate any individual(s) to answer questions relating to the information sought by Plaintiff," and that this impracticality

makes compliance with the subpoenas unreasonable.   Centralia and IDOC also assert Document Requests 1, 4, 5, 6, 9, and 10, and Designated Topics 1, 4, 5, 7, and 8 are disproportionate to the needs of this case because Plaintiff has either failed to limit the request to reasonable time and scope or failed to tailor the request to the issues in this case.   The Court agrees.   For example, Document Request 1 seeks IDOC and Centralia's "operational policies, handbooks, manuals and/or procedures applicable to or relating to Centralia Correctional Center — whether or not also applicable to other institutions — during any or all of the time period June 8, 2016 to April 13, 2018."   While this particular request is limited to the relevant time period, it is plainly overbroad in scope and not in any way limited to the issues in this lawsuit.   As such, it seeks information that is not relevant and is not proportional to the needs of this case.

The Court has reviewed the Designated Topics and Document Requests identified in Plaintiff's subpoenas served on IDOC and Centralia, and agrees that Document Requests 1, 4, 5, 6, 9, and 10 and Designated Topics 1, 4, 5, 7, and 8 are overly broad and seek information not relevant to Plaintiff's claims.   Centralia and IDOC need not produce a deponent to testify as to Designated Topics 1, 4, 5, 7, and 8 or produce documents responsive to Document Requests 1, 4, 5, 6, 9, and 10.   Insofar as Centralia and IDOC generally assert the requests are unreasonably cumulative and duplicative because they seek identical information, they have not provided sufficient information for the Court to assess this argument.   Indeed, it is not clear whether IDOC and Centralia would have the same responses to the Deposition Topics and Document Requests and the mere fact that the requests are similar is not sufficient to find that the requests are unreasonably cumulative or duplicative.

Based on the foregoing, IDOC and Centralia's Motion to Quash and/or Modify Subpoenas is **GRANTED IN PART**.   Plaintiff's subpoenas directed to IDOC and Centralia are **MODIFIED**

as directed in this Order.   As such, Centralia and IDOC must produce documents designated in Document Requests 2, 3, 7, and 8 in the relevant subpoenas, and prepare to testify as to Designated Topics 2, 3, and 6 as set forth in the relevant subpoenas.

Insofar as IDOC and Centralia assert the subpoenas should be quashed because Plaintiff failed to allow a reasonable time to comply, the Court finds this issue **MOOT**.   The parties are directed to meet and confer to establish a convenient time and place for all parties to conduct the Rule 30(b)(6) depositions, which **shall** be completed by the discovery deadline that will be set by the Court at a later date.

### <u>Plaintiff's Motion for Leave to Take Depositions Beyond the Number Provided by Fed. R. Civ. P. 30 (Doc. 216)</u>

In this motion, Plaintiff asks for leave to take up to fifteen depositions, not to exceed an aggregate of thirty-five hours.   In support of this request, Plaintiff explains there are eleven Defendants in this case and in deposing just these parties he will exceed Rule 30's limitation of ten depositions.   Plaintiff asserts he seeks to depose third-parties Centralia, Wexford, and IDOC in accordance with subpoenas that have already been served (and addressed by the Court above), and he is contemplating taking an additional third-party deposition.   Plaintiff asserts Rule 30(d)(1) provides that a "deposition is limited to one day of 7 hours"; thus, according to Plaintiff, Rule 30 contemplates an allowance of 70 hours for depositions.

While unique, Plaintiff's argument is misplaced.   Pursuant to Federal Rule of Civil Procedure Rule 30(a)(2), a party must obtain leave of court to take more than ten depositions. The duration of each deposition is limited to seven hours under Rule 30(d), and the Court finds the durational limits were imposed as a safeguard for the protection of parties and deponents, not as a guide for what may be an appropriate, cumulative amount of time to spend on depositions.   *See*

Fed. R. Civ. P. 30(d), 1937 Advisory Committee Note.

Moreover, in considering a motion under Rule 30(a)(2)(A)(i), the Court must decide whether allowing additional depositions is proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).   The Court must also consider whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.   Fed. R. Civ. P. 26(b)(2).   The party seeking to take additional depositions must make a particularized showing for the need for such deposition. *Farris v. Kohlrus*, No. 17-cv-3279, 2020 WL 10691950, at *3 (C.D. Ill. June 12, 2020) (citations omitted).

In consideration of the factors set forth above, the Court authorizes Plaintiff to take the depositions of the eleven Defendants.   As parties to this action, Plaintiff cannot use other means to find out what Defendants know and, as such, Plaintiff must be allowed to depose each defendant. Further, the Court finds Plaintiff has demonstrated a particularized need to complete the Rule 30(b)(6) depositions he sought pursuant to subpoenas directed to IDOC, Centralia, and Wexford, as Defendants often relied on "possession, custody, and control" grounds as the bases for declining to provide documents that should be in the possession, custody, and control of these entities. Plaintiff shall be allowed to complete these 14 depositions.   The Court finds no particularized need for a fifteenth deposition.

Plaintiff's motion is therefore **GRANTED IN PART**.   Insofar as additional depositions, including expert depositions may be sought by Plaintiff, he must file a motion to seek leave to

obtain the deposition.

The Court is also mindful of the possibility that the document production and Rule 30(b)(6) depositions for IDOC and Centralia may become duplicative or cumulative.   While the Court did not quash either entity's subpoena on these grounds as there was insufficient evidence to conclusively find the same, the undersigned urges counsel for Plaintiff and counsel for IDOC and Centralia to meet and confer to ensure IDOC and Centralia's compliance with the subpoenas does not result in duplication of discovery efforts that would necessarily waste both parties' time and effort.

<u>**Conclusion**</u>

Based on the foregoing,

- Motion to Quash Plaintiff's Subpoena filed by Wexford Health Sources, Inc. (Doc. 214) is **GRANTED IN PART AND DENIED IN PART**.

- Motion for Leave to Take Depositions Beyond the Number Provided by Fed. R. Civ. P. 30 filed by Plaintiff (Doc. 216) is **GRANTED IN PART AND DENIED IN PART**.

- Motion to Quash and/or Modify Subpoenas filed by the Illinois Department of Corrections and Centralia Correctional Center (Doc. 221) is **GRANTED IN PART AND DENIED IN PART**.

- Motion to Compel Discovery filed by Plaintiff (Doc. 226) is **GRANTED IN PART AND DENIED IN PART**.

- Supplement to Plaintiff's Motion to Compel Discovery (Doc. 228-1) is **GRANTED IN PART AND DENIED IN PART**.

- Supplemental responses to discovery requests as set forth in this Order shall be served by **November 30, 2022**.

- Status conference set for **November 14, 2022 at 11:00 a.m.**   The purpose of the call is to discuss the entry of an amended scheduling order, including setting this matter for trial. To join the conference call, the parties should call 888-273-3658. The access code is 1770924.   The security code is 1221.

**IT IS SO ORDERED.**

**DATED: November 1, 2022**

_s/_  _Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**