IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES ARMOUR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.   19-cv-678-RJD |
| DR. VENERIO SANTOS, et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Charles Armour, formerly incarcerated within the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. §§12101-213 ("ADA") and Rehabilitation Act, 29 U.S.C. §§ 29 U.S.C. §794 ("RA").  Plaintiff alleges that he suffers from chronic lower back pain, degenerative disc disease, seizure/convulsive muscle spasms,  fibromyalgia, and, as a result, is confined to a wheelchair.  Plaintiff alleges he was not provided adequate medical care for his conditions at Centralia Correctional Center ("Centralia").

The Court recently ruled on Defendants' summary judgment motions.  Doc. 285.  This case now proceeds to trial against Dr. Venerio Santos and Terri Dean for a specific incident in which Plaintiff testified that Dr. Santos grabbed and squeezed his foot aggressively, then told Nurse Dean and another nurse to put Plaintiff into an isolation cell where no one could hear him "cry for help" and there was no emergency call switch.  *Id*.  This case also proceeds to trial against Nurse Dean regarding another specific incident in which Plaintiff testified that she forced his shoulders down so that his feet would touch the floor.  *Id*.   Currently pending before the Court

is Defendants' Motion to Exclude Plaintiff's Expert Witness (Docs. 261 and 262) and Plaintiff's Motion to Exclude Defendants' Expert Witness (Doc. 265). Plaintiff responded to Defendants' Motion (Doc. 268) and Defendants responded to Plaintiff's Motion (Doc. 267).

### Legal Standards

This Court serves a "gatekeeping role" by ensuring that a jury only hears expert testimony if it is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The Court conducts a "*Daubert* inquiry" by considering three issues identified in Federal Rule of Evidence 403: 1) whether the expert is qualified to offer the opinions in question; 2) whether the expert's methodology is scientifically reliable; 3) whether the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). In a *Daubert* challenge, the party seeking to admit the expert's testimony bears the burden of establishing the expert's testimony is reliable and relevant. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014). "Pertinent evidence based on scientifically valid principles" will survive a *Daubert* challenge. *Daubert*, 509 U.S. at 597. It is not the role of the trial judge to determine whether the expert's opinions are correct. *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014) (internal citations omitted).

### Dr. Gary Lambert

Prior to his incarceration at Centralia Correctional Center, Plaintiff treated with a chiropractor, Dr. Gary Lambert. Plaintiff disclosed Dr. Lambert as an expert witness in this matter and provided a 9-page report authored by Dr. Lambert in which he lists his qualifications. Doc. 262-2. Dr. Lambert has been practicing as a chiropractor for 34 years. *Id.*, p. 8. He has a

"doctorate in Chiropractic and certificate in X-ray interpretation." *Id*. He describes "chiropractic" as "a form of complementary medicine, based on the diagnosis and manipulative treatment of misalignments of the joints, especially those of the spinal column."

Dr. Lambert's report contains multiple criticisms of the doctors and nurses at Centralia. In light of the Court's summary judgment ruling, criticisms of any doctor other than Santos or nurse other than Dean are no longer relevant. Moreover, Dr. Lambert's criticisms of Defendants Santos and Dean do not survive Defendants' *Daubert* challenge because Dr. Lambert is not qualified to give those opinions at trial. The differences between medical doctors and chiropractors (and nurses and chiropractors) are obvious and evidenced in Dr. Lambert's report. Chiropractors treat "misalignment of the joints." *Id*., p. 9. Their practice is limited to "disorders of the spine, musculoskeletal, and nervous system." *Id*., p. 9. Dr. Lambert does not prescribe medicine. *Id*., p. 6. Nothing in the record suggests that Dr. Lambert has ever learned and practiced the standards of care for physicians or nurses, or that he has ever had to consider the range of issues that practitioners must consider when treating patients in a correctional setting. Nothing in the record suggests that Dr. Lambert has ever observed or worked in a unit/facility for chronically ill patients similar to the infirmary at Centralia, in which nurses could observe Plaintiff at all times. Accordingly, Dr. Lambert's criticisms of Dr. Santos and Nurse Dean are not admissible at trial.

Dr. Lambert also opines that Plaintiff suffered "spasms…[as a] result of a compromised nervous system" at Centralia Correctional Center. *Id*., p. 2. Plaintiff has not provided the Court with any justification for finding that this opinion was reached using reliable methods. Dr. Lambert did not examine Plaintiff from 2015-2021; the events in question happened from 2016-

2018.  Dr. Lambert does not cite to any medical record from 2016-2018 that supports this opinion. When Dr. Lambert examined Plaintiff in 2022, Plaintiff's feet were symmetrically deformed "which indicates [to Dr. Lambert] that the source of the problem was very likely a nerve-related issue." *Id.*, p. 7.  However, he provides no explanation as to how he can conclude the "nerve-related issue" was present in 2016-2018.

Dr. Lambert claims in his report that he performed a differential diagnosis regarding the cause of the spasms in 2022 when he examined Plaintiff.  *Id.*, p. 7.  A differential diagnosis is an "accepted and valid methodology" but in order to employ it, the expert must "rule out" at least one other potential cause or condition. *Myers*, 629 F.3d at 644; *cf. Kudabeck v. Kroger Co.*, 338 F.3d 856, 860-63 (8th Cir. 2003) (chiropractor's differential diagnosis methodology was reliable where he identified and then ruled out other potential causes of the plaintiff's pain).  Dr. Lambert's report does not indicate that he never considered any cause other than "compromised nervous system" that led to Plaintiff's spasms.  Consequently, Dr. Lambert's opinion regarding the cause of Plaintiff's spasms at Centralia is not admissible.  Defendants' Motion to Exclude Dr. Lambert's Testimony (Doc. 261) is GRANTED.

**Dr. Kenneth Breger**

Defendants disclosed Dr. Kenneth Breger, a board certified internal medicine physician. Plaintiff moves to exclude Dr. Breger, contending that his opinions are not allowed under *Daubert* because he did not review the following documents: (1) Plaintiff's grievance records from Centralia Correctional Center; (2) reports written by Plaintiff regarding the treatment he received at Centralia, including his Interrogatory responses; (3) the report by Dr. Lambert (Plaintiff's chiropractic expert).  Plaintiff claims that Dr. Breger's opinion relies on "cherry-picked facts."

To the extent that Dr. Breger relied on faulty or incomplete information in forming his opinion, this argument should be developed through cross examination and is suited for the jury, who can decide the weight to give Dr. Breger's opinions. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000).

Plaintiff also argues that Dr. Breger failed to identify the documents upon which his opinions were based. This argument does not involve a *Daubert* standard, but invokes Federal Rule of Civil Procedure 26(a)(2)(B), which requires retained experts to provide a written report that states not only their opinions but the basis(es) for those opinions. Dr. Breger's report lists all of the medical records that he reviewed, and he refers to the records throughout his report. His references are not by page number, but provide enough information (e.g., the date, and/or that it was a nurse's note, doctor's note, or lab report) that the Court can decipher the bases for his opinions.

Plaintiff moves to exclude all opinions by Dr. Breger that "standards applicable to the correctional setting were followed." The record does not reflect that Dr. Breger has experience providing medical care in the correctional setting. Regardless, there are no opinions disclosed by Dr. Breger in his report regarding "standards applicable to the correctional setting" and therefore this issue is moot.

Finally, Plaintiff contends that Dr. Breger should be precluded from testifying that Plaintiff was "faking" his spasms, or engaging in manipulative behavior, because these opinions are "conclusory and unsupported." Dr. Breger explains in his report how he reached the opinion that Plaintiff was feigning his spasms-the nurses and doctors in the health care unit noted behavior or physical movements that were inconsistent with neurologic impairment. Dr. Breger also explains

why statements by Plaintiff (as noted in the medical records) were evidence of drug-seeking behavior.

In sum, the record reflects that Dr. Breger's opinions were sufficiently disclosed pursuant to Federal Rule of Civil Procedure 26 and meet the *Daubert* standards. Plaintiff's Motion to Exclude (Doc. 265) is DENIED.

**IT IS SO ORDERED.**

**DATED: November 2, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**